Good morning, Your Honors, Counsel, and may it please the Court, my name is Michael Gomez from the Office of the Federal Public Defender, and I am here on behalf of my client, Mr. Tigran Zmrukhtyan, and I'd like to reserve two minutes for rebuttal. Now, we've raised two issues in the briefs, but with the Court's permission, today I'd like to focus on the first issue, the reckless endangerment enhancement under sentencing guideline section 3C1.2. This case boils down to a mistake. The district court judges mistake in relying on an incorrect legal standard to apply a two-level increase under section 3C1.2. Some mistakes are harmless, but this mistake had drastic consequences. For the Court's mistake increased Mr. Zmrukhtyan's guidelines range by 14 to 18 months. That's an extra almost year and a half that he would be forced to spend in prison when the record does not warrant it. And how do we know it was a mistake? Because the record tells us. Now, the government does not and cannot dispute that the district court stated an incorrect legal standard when it applied the reckless endangerment enhancement. Well, counsel, I take it you're speaking about the district court having said substantial risk of bodily injury instead of serious bodily injury? Yes, Your Honor. The PSR accurately stated what the standard was, and so did the sentencing memoranda, and the Court indicated that it had read all those papers, so why shouldn't we construe this as the Court having understood the right legal standard but misstated it in that particular instance? Yes, Your Honor. One thing I'd like to emphasize is that while the correct legal standard was stated, the words serious bodily injury were stated in the PSR and the government sentencing memoranda, the definition was not before the Court. The definition of serious bodily injury appearing in section 1B1.1, comment M, was not before the Court, nor was the term or the definition for bodily injury. So there's no assurance that this Court can have. There's nothing in the record showing. I'm sorry. When you say it's not before the Court, what did you mean by that? The definition was not presented at any of the papers at the Court review. But I think that the judge is assumed to know the guidelines and the contents of the guidelines. You don't have to expressly spell everything out. We'd never get through sentencing if you did. So why are you assuming that he didn't know the definitions? The assumption is, it's sort of the converse, is that the presumption is that the judge knows the law, which is a common presumption. But it's the application of that presumption in this case, and there's no indication. Well, let's talk about that application. Why isn't it the case that when, as Mr. Zermurchten approached and was stopped in the parking lot and was tried, they tried to apprehend him, he was carrying five guns. One was on his waistband somewhere, and he had 300 rounds of ammunition, and they were struggling when they approached him. He was resisting. They went down to the floor. He was kicking and fighting them off, resisting putting his hands in the back. Why doesn't that create that substantial risk that the guidelines say you should apply? Well, Your Honor, first I'd like to point out that the firearms were not relied on in any way by the probation officer in applying this enhancement. If you look at the record citation piece... But even if you limit it, let's just limit it then to the loaded firearm in his waistband, which was relied upon. What about that? Why doesn't that create a substantial risk of death or bodily injury or serious bodily injury if it's discharged while he's resisting arrest? Well, first I'd like to clarify that it was not relied, even the loaded firearm in the waistband was not relied upon by the probation officer in applying this enhancement. There was no reference to the firearm in the justification for the enhancement, and that's at record citation PSR 9. And then after Mr. Zamroutian objected to the enhancement in the addendum to the PSR at PSR 58, that justification did not include any reference to the firearm. So it's your view that the court was not relying on the loaded firearm in his waistband as a basis for this risk of flight enhancement? Well, I think, Your Honor, the problem is that we don't know what the court relied on in applying this enhancement because the record is silent. Well, but the court read the PSR, though. And the PSR did not reference the firearm at all in its justification for application of this enhancement. Well, then it's very detailed in the facts as to what occurred. Don't you presume that the judge read that PSR? Yes. So if we're adopting, if we're allowing the judge to... The justification for the enhancement, the factual recitation for the justification did not include the firearm. Your client was convicted of 922G, that's felon in possession of a firearm. So the judge knew he was armed, by definition, or he couldn't have been convicted. So everybody knew he had weapons. So I'm not really sure what you're saying. The PSR does not... The PSR and the judge are not one entity. Okay? It's one tool the judge uses. But they're not bound by that. The judge clearly knew your client was armed, because that was the element of the offense. Your Honor, while the judge may have clearly known that my client was armed, the problem is the record is not clear. The record is not clear what the judge... What facts the judge relied on to apply this enhancement. Well, at one point the judge says, and this is at ER 13, the danger involved in bringing guns into a department store during the holiday season. So clearly that was weighing on the court's mind in terms of the risk of having the presence of firearms during a holiday shopping season. Why isn't it a reasonable inference to believe that part of this enhancement about risk of flight with a loaded handgun in his waistband also weighs on the court's mind as far as a substantial risk of harm? A couple of points I'd like to make on that point, Your Honor. First of all, mere possession of a firearm, to my knowledge, has never supported the application of this enhancement. It's always involved in the use of... But there's possession and more. So I would look at a number of cases, not only in our circuit but in others, where they look at possession of firearm plus something else. Plus in this case, the resisting, the struggling on the ground. That's where this case is, not in just a possession kind of a case, right? Well, Your Honor, a couple of points on that. First, I think the more salient point here is that the record is unclear as to what the court relied on. We don't know if the court relied on any of these facts in applying this enhancement. And more importantly, the court referred to a different legal standard when it applied the enhancement. Not serious bodily injury or death. It didn't even mention death. It just mentioned bodily injury. The record was clear. At 1 ER 12, I do believe the record is clear that there was a substantial risk of bodily injury. Not death or serious bodily injury, but bodily injury. And that's a distinct legal standard with a distinct legal definition with distinct legal consequences. Bodily injury would not lead to a two-level enhancement. Serious bodily injury does. Counsel, I can't count the times I misspoke during a sentencing. And I'm sure that, you know, there's a long laundry list of that occurring. So why can't I just assume that that was a simple mistake, a misstatement? Well, Your Honor, in this case, that misstatement has very tough legal consequences for not only Mr. Zimrotin, but the justice system as a whole. There are no assurances. We can allow a misstatement to pass if there are assurances, if this court can have confidence in the record, based on the record, that the court did make a verbal slip-up. But here, there are no assurances. There are no references to the correct legal standard of serious bodily injury. There's no reference to the definition of serious bodily injury. There are no factual reasons given to support the evidence. I don't want to derail you. I think we got it. I do have one question, and that is, the cases do suggest that the enhancement requires something more than just fleeing from the police. I think we all agree with that. So the question in my mind is, is being armed and wrestling on the ground enough? Because, you know, you could trigger the gun, right? I mean, you could accidentally fire and kill either the suspect or a police officer, an innocent bystander. Weapons go off accidentally, and that may be enough. But I will say, the cases I've seen, there's been a little bit more. For example, they were resisting arrest and also actively trying to pull the weapon out. Now, is there any evidence in this case that your client was trying to actually get to the firearms? No, there wasn't, Your Honor. And that's the crucial part that's missing from the factual basis, even if that did form the possession of the firearm form part of the factual basis. Mr. Zimruk, to him, there's no evidence that he attempted to use reach for brandish or display or do anything with the firearm. It was discovered after he was resisted, or after he was arrested. So the enhancement... Let me, I guess I will give you a little time rebuttal, but the Chavez case seems instructive to me because that, the same type of enhancement was upheld where a person ran into a store and disposed of a loaded firearm. So there's no fact pattern of reaching or anything there, but just the mere fact that a person was bringing a loaded firearm into a crowded store was enough during the course of a risk of flight to satisfy the enhancement. And here, don't we have to look at how the court viewed this under a clear error standard? Its factual finding is that there was a substantial risk of, if we don't agree with you about the clarity of the record, then the court's factual finding is that there was a substantial risk of death or serious bodily injury in this struggle. And you know, whether we might feel one way or the other, it's subject to a clear error standard for you, isn't it? A couple of, if I see that I'm out of time, but if I may respond, Your Honor, I'd like to clarify that in Chavez, it was not just the mere possession of the firearm that supported the enhancement. It was the fact that the defendant discarded the firearm where there were employees and or been injured with the firearm accidentally going off when it was discarded. Wasn't this a parking lot in Christmas, counsel? Go to any parking lot in Christmas at a mall. Are there people around in that parking lot in Christmas? Your Honor, we have to focus on the record and we don't know. The problem is that the record does not include any facts and it's the government's burden when it wants to increase a sentencing calculation by two levels, 14 to 18 months, to set forth those facts and those facts are nowhere in the record. The facts are focused on the brief physical struggle. And what about the clear error review standard? The clear error review standard this Court has held in Gasca Ruiz that the application of facts to the legal standard in the enhancement is reviewed for abuse of discretion. It is also said that it was clear error, but that those two standards of review are functionally the same in this context. But under any of these standards of review, this Court, there's no confidence that the Court exercised its discretion in the appropriate manner and found that the facts supported the enhancement under the correct standard because that's just not borne out by the record. Thank you. I'll give you a little time for rebuttal. Good morning. May it please the Court, Max Call on behalf of the United States. I want to focus in on a couple of the facts and Your Honors have discussed them already. But one is that the loaded gun that was in the defendant's waistband had a bullet in the chamber, right? So this was a chambered firearm that he had outside of the Glendale Galleria public mall. And the second is he actually injured one of those officers. He actually caused a wrist injury during the struggle. And that fact was before the District Court. It was undisputed. The District Court understood that this individual with five firearms actually injured one of the officers while he was struggling outside of the public mall. Mr. Call, I'm not sure that that argument benefits you because it sort of suggests what counsel was discussing that perhaps the District Court did misapply the legal standard and thought bodily injury was enough as opposed to serious bodily injury or death. I would disagree, Your Honor. I would say that this is a fact that shows that the struggle itself was quite significant. It caused injury to an individual and with a loaded chambered firearm in the waistband, this created a serious, significant risk of serious bodily injury or death. This was not a case in some of the other cases cited where the defendant simply lies down, does not struggle. This was a real struggle that actually caused an injury to one of the rest of the officers. You may be over-reading. The case is reckless endangerment typically has meant somebody hops in a car and drives like a maniac through crowded streets. Things have put a lot of innocent people at risk. I don't think tussling with a police officer, even if unfortunately the officer got hurt, is really what the Sentencing Commission had in mind with respect to that enhancement. Here's what I'm worried about. You're basically trying to get us to adopt the proposition that if a felon who's armed flees, they should almost automatically be subject to the 3C1.2 enhancement. I think that's over-broad. Where are you going to draw the line on that? I would say that when you look at the totality of the circumstances here, it is far-field from that scenario. This is not an individual running, even running with a gun. This individual was at a public shopping mall during a busy holiday season, struggling in a parking lot as folks are walking by. He has four other firearms. He's discarding similar to Chavez. He has four firearms locked in a bag. I think you should focus, I would focus more on the one in the waistband because I think that's a better case for you. Yes, he also has one in the waistband, but I do think that the fact that he had four other firearms and rounds of ammunition, hundreds of rounds of ammunition. Isn't this more egregious than Chavez in that it's not just discarding or trying to discard a firearm, or not just running, but actually, again, the struggle. The struggle, the resisting arrest, that is distinguishable, isn't it, or actually is more aggravating than in the Chavez scenario? It is. In Chavez, he simply discarded the gun. Here, he discarded four guns. It is in a bag, but he had four additional guns, and he's wrestling, and he actually injures one of the officers. In Chavez, there's no fact that one of the arresting officers was actually hurt as part of the struggle. Here, that's one of the many factors that applied in this enhancement. I would point the court to Reyes as well, which is a published decision. In that case, you have two defendants. This court held, with respect to one of those defendants, the record, the PSR, was clear that that individual was zigzagging through the public. He was causing danger to the public as they were driving. But the second defendant, it wasn't clear in the PSR, there wasn't a sufficient factual basis to make a determination whether this applies. Here, in the cases where there's two defendants, one passenger, and one is a factual record, the other doesn't, this is a single defendant, right? All of the facts in the PSR were this defendant's conduct. It was clear to the district court what this individual was doing. But I really think you're making a case that any time a 922-G felon in possession flees necessarily armed, because that's the nature of the conviction, they're going to be subject to this enhancement. I just think that's overbroad. If the individual has a chambered firearm in their pocket, actually injures one of the arresting officers, and does so outside of a shopping mall, I think it would apply. I think you can assume that every 922-G convicted felon has a firearm that contains ammunition, okay? I know it's not true in every case, but in most, it's going to be true that the gun is loaded and locked. So, to me, you're getting dangerously close to saying it's an almost automatic enhancement just for the status of the crime. So, there are courts in other circuits who have held that the mere fact that the individual is dealing with officers would allow this enhancement to apply. But that's not this case, right? This had a chambered bullet in the gun. That's a distinguishing factor. That alone makes it a very risky and dangerous act. And he is in a physical struggle with multiple officers, right? He's actually injuring the officers. So, I take it your delineation is, let's take Judge Donato's hypothetical. Suppose someone, an armed felon, runs, but he runs to a non-crowded area and then lays down the firearm and is arrested. Then would you agree that we would not want to do the enhancement in that circumstance as opposed to one where there's a struggle with the firearm and the waistband? So I think you'd want to look at all the circumstances in that scenario. Where is he running? Is it in public? Are there other people? Is he zigzagging through the streets that might cause danger to the community? And in Reyes, the court noted in the second defendant, in which it remanded, stated the armed officer alone might have been enough if there was a struggle, right? The fact that the officer is armed and then ensues in a struggle with his defendant could create a risk.  Well, but you would agree that in Judge Sanchez's hypothetical, then if that person did run and instead of putting the gun on the ground, just kept the gun and just surrendered. Just kept the gun and just surrendered. You wouldn't say that you'd have to include the enhancement in that circumstance, would you? No, I think the point of this being a 922-G and being a felon in possession of a firearm, I think that would be too broad if the individual simply had a gun and was not resisting arrest or perhaps starts the flight and doesn't. But again, that's far field, right, from where we are. And to be clear, there was one other point on this. The reason that the definition of serious bodily injury was not in the record was because the defendant did not challenge that. This was not a sentencing hearing or an objection that said the struggle that he had with these officers or the public outside of the shopping mall. That was never raised. It's being raised for the first time here. And so if the defendant believed, no, I actually caused a wrist injury, but I never created a risk, a more serious injury, the district judge would have had an opportunity to say, okay, well, let's talk about this and flesh this out. It was never raised, right? And that's why the definition was not in the report. Isn't it fairly obvious that if you're in a fight with, as you've emphasized, a firearm that has a chamber, a round in the chamber, that can go off accidentally and kill somebody, right? I mean, isn't that? Absolutely, yes. Isn't that kind of enough for a substantial risk or serious risk? Again, yes. If you're wrestling with officers in public with a chambered gun, yes, I would think that fact alone. But again, we're also outside of a public shopping mall, and I'm sorry, I see I'm out of time. Oh, I'm not. I've got more, yeah. If you're outside of the, you're doing this as well as outside of a shopping mall. And so I think all those factors allowed the court to reach this conclusion. I would note, again, there are courts in other circuits that have gone to say, essentially, if you have the gun itself and it's a loaded gun, that's enough. And the 11th Circuit, the 4th Circuit, the 8th Circuit, these courts have all held that that's enough. And here, again, we've got a number of other issues, including the public shopping mall. I would say clear error does apply here. We are not challenging the fact that the law itself would be de novo, but if you're under the abuse of discretion analysis, the second factor in Hinkson, this is clear error. And it's the same standard that was set forth in United States v. Young. That case, they said, again, two defendants, one driver and one passenger. The driver is recklessly speeding and causing a danger to the community. The passenger, we're not so sure yet what the PSR did not have enough on that passenger. So they remanded so the district court could say, okay, let's talk about this passenger. I need to know more information. Here, the district court had all the facts before it. They're not multiple defendants. It's one defendant. Well, just to switch gears slightly before you have to sit down, so 3C1.2 does say the district court is supposed to specifically identify the facts. Now, I'm not advocating that necessarily saying the facts that are in the record is not enough, but do you think that the judge adequately discharged the fact finding? Yes, I do, because he stated that he read the PSR. He factored in the PSR and relied on the PSR, and I think that is clear. He said the record is clear, and he went on to discuss, as you already noted, the fact that this was a holiday season. It was five days before Christmas outside of a busy shopping mall. So I think he did adequately address that, and I would submit on the reasonableness of the sentence as well. Thank you. Thank you. Mr. Goombs, we'll give you one more minute. Your Honor, I'd like to start off by reminding the court that the record is not clear. In fact, the record is completely silent as to the district court's reasons for applying this enhancement, and that's the problem here. The fact that the record is silent and the court relied on an incorrect legal standard and the factual basis in the PSR does not support an ordinary application of Section 3C. 1.2 shows that the imposition of this enhancement was erroneous. Now, I know the court has focused a lot on Mr. Zmruktan's possession of a loaded firearm in his waistband, and the government said that other circuits have found that this alone is enough to support the enhancement. That is not what those cases say from the other circuits, and I'd point this court to our reply brief at pages 17 to 18, which distinguish all those cases. There's not just mere possession of a firearm. It's a use, a brandishing, an attempt to use, a display, a discarding of a firearm. You have to do something with the firearm to warrant the enhancement, and here, as Your Honor pointed out, there was nothing done. Mr. Zmruktan didn't do anything with the firearm. It just happened to be on his waistband, and I think the court has to also keep in mind the effect of applying this enhancement in a case such as this, where someone just happens to have a firearm in their waistband, and this court has recognized that defendants sometimes engage in instinctive flight. If flight is instinctive, this court has also recognized that there is, after that instinctive flight, it's followed by a brief physical struggle, so any behavior that is instinctive would lead to imposition of this 3C1.2 enhancement, and it would create this perverse situation where defendants are not incentivized to refrain from using those firearms if they're going to get the enhancement anyway. If they know— Mr. Gomez, try to wrap up, please. Okay. So, Your Honor, based on our arguments of the brief and today, we ask that this court remand, that vacate Mr. Zmruktan's sentence or remand for resentencing because the court's arguments here are too far—too great of a cost in Mr. Zmruktan's life and life. Thank you, Your Honor. Thank you, counsel, for your helpful arguments. The matter will stand submitted.
judges: SANCHEZ, MENDOZA, Donato